CRESCENT COTTON CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4558.   Promulgated December 17, 1926.

Reserves set up to cover estimated shrinkages in weight of cotton shipped to Europe and reserves for exchange and for "hedges" are not allowable deductions.

*W. E. Hayes, Esq.*, for the petitioner.
*J. A. Adams, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes of $2,183.42 and $16,637.04 for the fiscal years ended August 31, 1919, and August 31, 1920, respectively. The deficiency for 1919 results from the action of the Commissioner in disallowing an amount of $7,975 deducted by the petitioner in its return as a reserve for shrinkage in weight on cotton shipments. The deficiency for 1920 results from the disallowance by the Commissioner of the amounts of $32,471.27, $5,300 and $5,300, representing deductions taken by the petitioner as reserves for shrinkage in weight on cotton shipments, for exchange, and "hedges," respectively.

#### FINDINGS OF FACT.

The petitioner is a Louisiana corporation with its principal office at New Orleans. During the years involved in this proceeding it was engaged in exporting cotton to Europe. Its books of account were kept on the accrual basis.

The cotton was weighed at New Orleans, which was the point of shipment. In invoicing cotton to European purchasers the peti-

tioner added 8 pounds per bale to the actual weight. This was done to get the benefit of any possible increase in weight upon being reweighed at the point of arrival. The addition of an extra amount to provide for an increase in weight is a custom of the trade and in accordance with the rules and regulations of the Liverpool Cotton Exchange by which petitioner's contracts were governed. Immediately upon invoicing and shipping the cotton, the petitioner received payment by drawing against credits available to it in New York and London.

When the cotton arrived in Europe it was reweighed. If its weight exceeded the amount at which invoiced, the petitioner received no benefit therefrom. If it weighed less than the weight shown by the invoice, the petitioner under its contract was obligated to make an adjustment for the decrease. This was accomplished by giving the purchaser a credit for the amount involved or by making a cash refund. The adjustments for loss in weight are based upon reports from petitioner's agent in Europe. Sometimes it was two or three months after shipments were made before petitioner received a report from its agent.

In its gross sales each year the petitioner included as sales the additional 8 pounds per bale which had been shown in the invoices.

At the close of the years involved in this proceeding the petitioner took the outstanding shipments from which it had received no reports and computed a certain percentage in weight based on the experience of its officials in the business. This shrinkage in weight multiplied by the average sale price of the outstanding shipments gave the amounts which the petitioner set up as reserves for shrinkage in weight of cotton shipped.

The amount set up on its books and deducted by the petitioner in its 1919 return for such a reserve was $7,975. This deduction was disallowed by the respondent. For 1920 the petitioner set up a reserve for $35,300, of which respondent disallowed $32,471.27. These deductions were disallowed by the respondent upon the ground that they represented contingent reserves. During petitioner's fiscal year 1920 the company made refunds and credits amounting to $7,143.97. These were allowed by it on account of loss in weight of shipments outstanding on August 31, 1919, and for payments for weighing cotton in Europe. Against the shipments outstanding on August 31, 1920, refunds and credits amounting to $29,916.92 for shrinkage in weight and for weighing cotton in Europe were made by petitioner. An additional amount of $2,115 was also allowed by the petitioner on account of the quality of cotton. The total of the two amounts is $32,031.92. These allowances were made after the petitioner's taxable years had been closed, upon information received

subsequent to such closing. For the fiscal year ended August 31, 1920, allowances were made at dates ranging from September 9, 1920, to January 3, 1921.

In its 1920 return petitioner deducted $5,300 representing "reserve for exchange, 90-day draft, net claim $5,300." This reserve was set up on the books on September 17, 1920, in connection with a 90-day sight draft for some £22,000 drawn by the petitioner on one of its customers in Europe.

Substantially the amount of the draft was remitted by the customer in the regular course of business. The deduction was disallowed by the respondent, upon the ground that the evidence submitted to him was not sufficient in his opinion to warrant its allowance.

At the time the petitioner sold cotton for future delivery it was not always possible for it to buy specific grades or staples. It then bought futures in the open market. Sometimes when petitioner considered that certain grades or staples were selling at a reasonable price it purchased them. Against these purchases it sold contracts in the future market. These trading operations, known as "hedging," are engaged in by the petitioner for its protection against fluctuations in price. The petitioner traded in future contracts only in connection with transactions in actual cotton.

During the fiscal year ended August 31, 1920, the petitioner bought a certain amount of actual cotton and sold as nearly as possible the equivalent amount of futures as a hedge. Of the cotton that had been purchased, a certain quantity remained unsold on August 31, 1920. Against the unsold cotton a certain amount of futures had already been sold. On the basis of the market quotations on August 31, 1920, the futures outstanding against the unsold cotton showed a loss of $5,000. The petitioner set up a reserve of $5,300 for losses on hedging operations and deducted that amount in its return for the year. Profits made on other hedging operations during the year amounted to $18,000 and were included in petitioner's income.

### OPINION.

TRAMMELL: The petitioner contends that the reserves set up by it for shrinkage were in the nature of accruals and should be allowed as such to the amount of allowances made by it for each year.

At the time these reserves were set up the petitioner was not in possession of the information necessary to determine what adjustments, if any, would be required, nor does the evidence disclose that the cotton had been weighed in order to establish the existence of a liability before the close of the taxable year. The amounts set up on the books to provide for necessary future adjustments were noth-

ing more than an estimate of future liabilities which would not result or be determined until the cotton was weighed and found to be short in weight. The fact that the experience of petitioner's officers enabled it to approximate closely the amounts subsequently allowed is not sufficient to take those amounts out of the class of estimates of future undetermined losses and put them into the class of accruals. See *Appeal of Morrison-Ricker Mfg. Co.*, 2 B. T. A. 1008, and cases cited, and *Appeal of Helvetia Milk Condensing Co.*, 5 B. T. A. 271.

The action of the respondent in disallowing the reserves deducted by the petitioner was correct. The credits and refunds of $7,143.97 and $32,031.92 are allowable deductions for the years in which they were made in the absence of evidence that shortages in weight of cotton had been determined prior thereto. We base our decision upon the fact that we have no evidence as to whether the cotton or any part thereof had actually been weighed before the close of the taxable years.

From the evidence submitted in connection with the deduction of $5,300 as a reserve for exchange, we are unable to find that the respondent's action in disallowing this deduction was erroneous.

On August 31, 1920, a portion of actual cotton against which the future contracts had been sold was still unsold. The future contracts against the unsold cotton had never been closed out, but were still outstanding. The loss of $5,000 computed by the petitioner on its hedging operations was an anticipated loss and not an actually sustained loss. Therefore, the reserve deducted by the petitioner for such loss was properly disallowed.

*Judgment will be entered on 15 days' notice, under Rule 50.*